Teresa KELLY, Individually and as Administratrix of
the Estate of John A. KELLY, Deceased
*v.* Raymond M. CESSNA and
Alta Louise CESSNA, Husband and Wife

84-57                                    668 S.W.2d 944

Supreme Court of Arkansas
Opinion delivered May 14, 1984

*Smith & Smith,* by: *Raymond C. Smith,* for appellant.

*Jones, Gilbreath & Jones,* by: *Kendall B. Jones,* for appellee.

ROBERT H. DUDLEY, Justice. John A. Kelly, a pedestrian, was killed when he was struck by an automobile driven by appellee, Raymond Cessna. Appellant, Teresa Kelly, administratrix of her husband's estate, brought a wrongful death action against Raymond Cessna and his wife Alta, who was a passenger in the car. At the close of appellant's proof the trial court granted a directed verdict for the appellees. The sole question is whether the appellant made a case for the jury. Jurisdiction of this tort case is in this court. Rule 29(1)(o).

At 8:50 on the night of October 3, 1980, the appellees were in their automobile driving south on highway 71 near Winslow. They crossed a bridge and entered a left curve. There is a "Reduce Speed" sign in the curve. The curve ends and the road becomes straight .2 mile from a lighted ball park where a football game was in progress. At the entrance to the ball park there is a "45 m.p.h." sign. The ball field is approximately 200 yards off the highway.

Appellee Raymond Cessna testified that he observed the "Reduce Speed" sign in the curve and reduced his speed by disengaging the automatic speed control. He testified that at a point near the 45 m.p.h. sign he was in the right lane of the two-lane highway and was going approximately 45 m.p.h. when he saw John Kelly in front of him "a half a second" before impact. The left front fender and the left headlight of the car struck Kelly. Appellee testified that his

headlights were on bright beam and that he was looking in the path of his headlights as well as to the left of the highway where the ball field lights were shining. The appellee and a truck driver following him testified that he did not see any pedestrians on the highway prior to the accident. A reasonable inference is that Kelly was just to the right of the center of the southbound lane of the highway in line with the left headlight of appellee's automobile at the moment of impact.

Procedurally, a directed verdict is proper only when the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside. On appeal, we determine whether there is substantial evidence by giving the evidence, and all reasonable inferences deducible from that evidence, the highest probative value in favor of the non-moving party. *Green* v. *Gowen and Gowen,* 279 Ark. 382, 652 S.W.2d 624 (1983).

Substantively, pedestrians as well as motorists are entitled to use the public highways and each must act with regard to the presence of the other. *Haralson* v. *Jones Truck Lines,* 223 Ark. 813, 270 S.W.2d 892, 48 A.L.R. 2d 248 (1954). The driver of a motor vehicle must anticipate the presence of pedestrians on streets and highways and use ordinary care to avoid injuring them. AMI Civil 2d, 909. The driver, appellee Raymond Cessna, had a duty to anticipate the presence of a pedestrian on the highway. He had a duty to keep a lookout for pedestrians. The fact that he did not see John Kelly until immediately before the impact is substantial evidence that he was not keeping a proper lookout for pedestrians. Therefore we reverse and remand the directed verdict in favor of appellee Raymond Cessna.

There is no substantial evidence of negligence on the part of the passenger, Alta Cessna. The directed verdict in her favor was proper.

Reversed and remanded as to appellee Raymond Cessna; affirmed as to appellee Alta Cessna.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. Taken literally, the majority opinion holds that pedestrians have just as much right to the middle of a state highway as a vehicle, and that pedestrians have the right-of-way or an equal right-of-way when crossing a state highway at an unmarked intersection. That is, of course, a perversion of the law and the decision in this case is wrong in my judgment.

The appellee did absolutely nothing wrong, and there is no evidence that he did, only the speculation that he could have somehow foreseen and avoided the accident. The evidence showed that the appellees were driving in a safe and prudent manner on a busy highway when the deceased evidently darted in front of their car, giving the appellees no chance at all to take any evasive measures.

The part of the highway in question is cleared for traffic; that is, it is not a school zone, a marked crossway, or an intersection. The duty to keep a lookout is not always the same in every instance. It depends on the place and the circumstances. For example:

> Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection *shall yield the right-of-way to all vehicles upon the roadway:* (Italics supplied.)

Ark. Stat. Ann. § 75-628 (a) (Repl. 1979). A driver is ordinarily free to assume that others will exercise proper care. As Prosser states, "It would not be easy to move traffic if motorists could not assume that other cars will keep to the right, and drove accordingly; or that those who use the highway will be reasonably intelligent, competent and careful, and will look out for themselves." W. Prosser, *Law of Torts* § 33 (1971). The duty to keep a lookout increases with the presence of children or incapacitated people. Ark. Stat. Ann. § 75-628 (d) (Repl. 1979) states:

> Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and

shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

Where is the substantial evidence that the appellees did not keep a proper lookout? Where is the evidence that the deceased had been walking along the highway, or standing there apparently ready to dart across this busy highway? Where is the evidence that the driver should have been constantly searching the side of the highway on this night, while driving in relatively heavy traffic, anticipating that a grownup would dart in front of him or be in the middle of the road? That evidence does not exist.

The only evidence at all is the statement by the driver, corroborated by the truck driver behind him, that he was driving in a very careful and prudent manner. There is no testimony by anyone else who witnessed the accident. We cannot affirm verdicts based on speculation and theoretical possibilities — only on substantial evidence. *Nichols* v. *International Paper Co.*, 278 Ark. 226, 644 S.W.2d 583 (1983).

The majority opinion actually somewhat distorts the law. The case of *Haralson* v. *Jones Truck Line*, 223 Ark. 813, 270 S.W.2d 892 (1954), cited as authority for the ruling, concerned a pedestrian walking on the left edge of the highway, who could have been seen, certainly if the lights on the vehicle striking him had been on bright. In turn that decision was based on two cases which involved children in or along the highway. *Oliphant* v. *Hamm*, 167 Ark. 167, 267 S.W. 563 (1925); *Morel* v. *Lee*, 182 Ark. 985, 33 S.W.2d 1110 (1930). If pedestrians do have an equal right-of-way on a state highway, then the law is badly out of date — today highways are primarily for vehicles, not as they once were hundreds of years ago, for use by anyone.

There is no evidence at all, not one scintilla, that this driver should have anticipated a man would dart across this busy state highway. I would affirm the trial court's decision to dismiss the case.