Danny T. SHRUM, Jr., and Martha Shrum *v.*
SOUTHERN FARM CASUALTY INSURANCE
COMPANY and Farm Bureau Mutual Insurance Company
of Arkansas, Inc.

92-832 848 S.W.2d 395

Supreme Court of Arkansas
Opinion delivered February 22, 1993
[Rehearing denied March 29, 1993.]

*Daily, West Core, Coffman & Canfield,* by: *Michael C. Carter,* for appellant.

*Warner & Smith,* by: *Joel D. Johnson,* for appellee.

TOM GLAZE, Justice. This tort case was commenced by appellant Danny T. Shrum, Jr. and his wife after he slipped and fell on the bathroom floor of the leased-office space of the appellees, Southern Farm Casualty Insurance Company and Farm Bureau Mutual Insurance Company of Arkansas, Inc.[1] After reviewing the pleadings, answers to interrogatories and depositions, the trial court granted the appellees' motion for summary judgment from which Shrum brings this appeal.

 First, we dispose of appellees' argument that Shrum was a licensee, not a business invitee, at the time of his fall.[2] An invitee is a person who goes upon the premises for a purpose

---

[1] While these are separate companies which have their genesis out of the Farm Bureau Federation, we refer to them collectively as appellees for the sake of simplicity in writing.

[2] We note that the Sebastian County Farm Bureau furnished this office space to appellees, but the appellees' agents and employees were responsible for furnishing supplies to and cleaning the bathroom.

connected with an activity which the owner carries on or permits to be carried on on the premises for a purpose mutually beneficial to himself and the owner and by invitation of the owner. *Dorton* v. *Francisco*, 309 Ark. 472, 833 S.W.2d 362 (1992). The property owner owes an invitee a duty to use ordinary care. *Id.* The facts here clearly establish Shrum to be an invitee.

Shrum had maintained insurance with appellees. On the day of his fall, he had gone to appellees to make sure the life insurance he had covering the indebtedness on his house would not be prematurely canceled on the date reflected on a notice mailed to him by appellees. Shrum testified that he saw Billy Moody, appellees' agent, at a bank, and asked Moody about the notice Shrum received. Moody told Shrum to go see Shrum's agent with appellees, Richie Grandstaff, about the matter. Shrum then went directly to appellees' office where he saw Grandstaff, but before discussing business with Grandstaff, Shrum utilized appellees' bathroom when and where he fell.

Appellees suggest Shrum came to their office on business that benefitted only himself; therefore Shrum was a licensee, not an invitee. The record reflects to the contrary. Shrum had been a customer of appellees for at least a seven or eight year period of time and the appellees obviously benefited from that relationship.[3] This fact of a limited business relationship cannot be diminished merely because Shrum's fall on appellees' premises occurred at a time when Shrum was attempting to correct what he purportedly believed to be mistakes made by Farm Bureau in (1) crediting insurance payments made by Shrum and (2) attempting to cancel his insurance prematurely. Appellees' agent, Billy Moody, told Shrum to see agent Grandstaff to correct these problems, and relying on that advice, Shrum proceeded to the appellees' office to do just that. We have no problem in concluding that, based on these facts, Shrum was an invitee.

The paramount issues in this appeal are whether Shrum has shown that there is an issue of material fact as to whether soap on appellees' bathroom floor when Shrum fell was there due to appellees' negligence, or whether the soap had been

---

[3] Billy Moody testified Shrum had done business with appellees at least for as long as Moody worked for appellees in Fort Smith.

on the floor for such a length of time that appellees knew of its presence and failed to use ordinary care to remove it. *See, e.g. Boykin* v. *Mr. Tidy Car Wash, Inc.*, 294 Ark. 182, 741 S.W.2d 270 (1987). This court has stated that the mere fact a patron slips and falls in a store does not raise an inference of negligence. *Id.* To prevail against appellees' motion for summary judgment, Shrum is required to show that a genuine issue of material fact exists in showing Shrum's injuries resulted from the appellees' negligence and, in deciding whether Shrum has succeeded, we view all reasonable inferences in his favor. *See Sanders* v. *Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992).

Our review of the record shows that, when Shrum went to appellees' office to see Grandstaff, appellees' district claims manager, Paul Mourot, was conducting his monthly meeting of his adjustors. Immediately prior to Shrum's use of the appellees' bathroom, Mourot and other adjustors or agents of appellees had already been in and emerged from the room. The pertinent facts and sequence of events surrounding Shrum's fall are as follows:

(1) A plastic container of liquid soap was kept on the sink, not the wall, in the appellees' bathroom.

(2) The appellees' insurance agents, adjustor or secretary in the office bore the duty and responsibility to clean and maintain the bathroom.

(3) As previously mentioned, appellees' agents or adjustors had entered the bathroom prior to Shrum, and appellees' supervisory agent, Paul Mourot, said that he was the last person to enter and leave the bathroom before Shrum entered.

(4) Mourot testified he inspected the bathroom floor before leaving, and he would have observed soap if any had been on the floor.

(5) Mourot testified that if there was a problem with the building or if he needed something done, he would have contacted agent, Billy Moody, about it.

(6) After Shrum entered the bathroom and washed his hands, he slipped and fell, and immediately afterwards, looked where he had been standing and saw some soapy-looking stuff on the floor.

(7) Agent, Billy Moody, testified that he learned Shrum was hurt and went to help him. Upon entering the bathroom, Moody said that Shrum warned him there was something slick on the floor and Shrum said, "I think its soap."

(8) Moody found soap on the floor which was about the size of a silver dollar. He cleaned up the soap, but did not preserve it.

(10) Both Mourot and Shrum denied having spilled any soap while present in the bathroom.

In viewing the above facts favorably to Shrum, one could definitely conclude soap was on the bathroom floor and the source of the soap was from the plastic soap container kept on the sink. Shrum slipped on the soap where he stood ready to exit the bathroom. It also could reasonably be inferred that, when Mourot inspected the bathroom floor, he either overlooked the soap or, having seen the soap, he failed to exercise ordinary care to remove it, believing he would later contact Moody about it. Either view of the facts reflects a material fact question which should be presented to a jury.

Appellees suggest one further point by arguing Mourot had no responsibility for cleaning appellees' bathroom because his principal office was in Little Rock, not Fort Smith. Mourot's own testimony reflects he inspected appellees' bathroom floor, and if he had seen soap, he would have remedied the problem. Clearly Mourot undertook the same duty his other cohorts had in keeping the premises clean. Too, Mourot was a regular monthly user of appellees' office facilities, and inferentially at least would have been responsible along with other of appellees' local agents and employees to see that their bathroom facilities were cleaned and maintained properly.

For the reasons set out above, we reverse the trial court's granting of appellees' summary judgment motion and remand for further proceedings.

DUDLEY, NEWBERN and BROWN dissent.

DAVID NEWBERN, Justice, dissenting. Accompanying their motion for summary judgment the insurance companies presented discovery responses from which it could be concluded that there was no negligence on their part either in placing soap on

the bathroom floor or in allowing it to remain there. One or the other must be shown for the Shrums to recover. *Bank of Malvern v. Dunklin*, 307 Ark. 127, 817 S.W.2d 874 (1991); *Safeway Stores, Inc. v. Willmon*, 289 Ark. 14, 708 S.W.2d 623 (1986); *Johnson v. Arkla, Inc.*, 299 Ark. 399, 771 S.W.2d 782 (1989).

In response, the Shrums have presented no reference to evidence by which they can prove negligence either in placing soap on the floor or in allowing it to remain there. Mere presence of soap on the floor is not enough. *Sanders v. Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992); *Diebold v. Vanderstek*, 304 Ark. 78, 799 S.W.2d 804 (1990). The Trial Court was eminently correct in granting the summary judgment motion.

I respectfully dissent.

DUDLEY, J., joins in this dissent.

ROBERT L. BROWN, Justice, dissenting. This decision infers negligence from the existence of some "soapy looking" substance on the bathroom floor. No proof was presented on how it got there — the appellant said in deposition that he did not know — or how long it had been on the floor. Yet, the majority reverses a summary judgment in favor of Southern Farm.

This runs counter to longstanding case law:

> [T]he presence of a foreign or slick substance which causes a slip and fall is not alone sufficient to prove negligence. It must be proved that the substance was negligently placed there or allowed to remain.

*Diebold v. Vanderstek*, 364 Ark. 78, 79, 799 S.W.2d 804, 805 (1990); *see also Collyard v. American Home Assur. Co.*, 271 Ark. 228, 607 S.W.2d 666 (1980); *LeMay v. W&R Corp.*, 262 Ark. 530, 558 S.W.2d 154 (1977). No such proof exists in this case. Nor are facts presented from which negligence of the appellees could be reasonably inferred. *Diebold v. Vanderstek, supra*; *McKay v. St. Paul Ins. Co.*, 289 Ark. 467, 711 S.W.2d 834 (1986).

In a related vein, we have held that the mere fact that a patron slips and falls in a store does not give rise to an inference of negligence. *Dye v. Wal-Mart Stores, Inc.*, 300 Ark. 197, 777 S.W.2d 861 (1989); *Johnson v. Arkla, Inc.*, 299 Ark. 399, 771

S.W.2d 782 (1989); *Skaggs Co.* v. *White*, 289 Ark. 434, 711 S.W.2d 819 (1986); *Safeway Stores, Inc.* v. *Willman*, 289 Ark. 14, 708 S.W.2d 782 (1989).

We have affirmed summary judgment in favor of the premises owner where the plaintiff could not show that the owner had knowledge that the substance was on the floor or parking lot and where circumstances did not exist from which that knowledge could be inferred. *Sanders* v. *Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992) (fall occurred due to a "brown, slimy substance"); *Diebold* v. *Vanderstek, supra* (fall blamed on a "green, slimy substance"). Similarly, in *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991), we reversed a jury verdict in favor of the injured party due to the absence of substantial evidence on how the faulty substance, presumably water, got on the floor. We could only speculate on this point which was sufficient to sustain a verdict.

The same is true in the present case. Shrum stated he did not know how the "soapy looking" substance he slipped on got on the floor, and we are left to speculation. This is not a situation such as we had in *Boykin* v. *Mr. Tidy Car Wash, Inc.*, 294 Ark. 182, 741 S.W.2d 782 (1989). In *Boykin*, an employee was rinsing soap off of cars six feet away from where Boykin slipped on soapy water. Knowledge on the employer's part under those circumstances could readily be inferred. Here, there was nothing shown to suggest to Southern Farm that something was amiss. The mere presence of a plastic soap container in the restroom does not require a trial on the merits.

Knowledge of a suspect substance can be inferred from the length of time that it is on the floor, but we have held that the duration must be substantial. *Bank of Malvern* v. *Dunklin, supra*; *Johnson* v. *Arkla, Inc., supra*; *Johnson & Kroger* v. *Hemphill*, 245 Ark. 699, 434 S.W.2d 818 (1968). In *Johnson* v. *Arkla, Inc.*, we cited authority to the effect that one or two hours might not be sufficient time from which to infer knowledge and, therefore, negligence. In the case before us, no proof of duration was submitted by the appellant.

In sum, there was no proof of previous problems with soap in the bathroom, no proof that a representative of the responsible party had any knowledge of a restroom problem, nothing to

evidence that the responsible party had anything to do with the substance on the floor, and no showing that the "soapy looking" substance had been on the floor for any period of time. We are left, thus, to raw speculation.

Under comparable facts, the South Carolina Court of Appeals affirmed a directed verdict when the plaintiff had alleged a slip and fall on an "oily substance" in a restroom. *Dennis* v. *Wal-Mart Stores, Inc.*, 392 S.E.2d 810 (S.C.App. 1990). The Court stated:

> In the instant case, there was no evidence that the oily substance was caused by a specific act of Wal-Mart or that Wal-Mart had actual or constructive knowledge that the oily substance was on the restroom floor.

392 S.E.2d at 811. So it is in the case at hand.

What the majority is requiring henceforth is an endless procession of restroom inspections, and that may not even be sufficient because under the opinion a showing of how the substance got on the floor and its duration are discounted. The fact that soap was in a plastic container in the bathroom and the mere *possibility* that Paul Mourot may have missed seeing soap on the floor (he says he did not) are enough to send the matter to trial, according to the majority. I would require something more.

DUDLEY, J., joins in this dissent.